NOT DESIGNATED FOR PUBLICATION

No. 114,655

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

KYLER WAYNE CARRIKER,
*Appellee*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; TERRY L. PULLMAN, judge. Opinion filed May 12, 2017. Affirmed.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, *Derek Schmidt*, attorney general, for appellant.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellee.


Before ATCHESON, P.J., STANDRIDGE and SCHROEDER, JJ.


*Per Curiam*:  This is an appeal taken by the State from the district court's decision to grant Kyler Wayne Carriker's request for a dispositional departure from a presumptive prison sentence. The criminal charges against Carriker stemmed from his involvement in a drug deal that resulted in the death of Ronald Betts. After an 8-day jury trial, Carriker was convicted of attempted distribution of marijuana and acquitted of felony murder. Before sentencing, Carriker filed a motion for dispositional and/or durational departure. The district court granted the motion, and the State appeals. For the reasons stated below, we affirm.

1

FACTS

On April 18, 2013, Lorenzo Spires picked up his friends Dennis Haynes and John Carter for the purpose of meeting up with Carriker to buy drugs. Haynes had a gun with him. Carriker had arranged for the drug sale to take place at the home of Kyle Beltz and instructed Spires to park at a smoke shop near Beltz' house. When Spires arrived, Carriker approached the vehicle and told Spires, Haynes, and Carter to come inside the house. Spires declined, telling Carriker that he did not want to come inside because he had been robbed before. Carriker went back inside, then returned with his friend Ronald Betts. Betts asked the men to come inside and assured them that nothing would happen. Carriker, meanwhile, informed Spires that he and his associates were armed, and said that Spires and his friends could bring guns inside if they feared that something was going to happen. After a brief conversation, Spires, Haynes, and Carter agreed to enter the house.

Upon entering Beltz' house, Spires saw marijuana on a table in the family room. Betts went to the kitchen to get a scale at Haynes' request, and Carriker and Spires began discussing a possible gun sale. Carriker pulled out his gun, removed the magazine, handed the weapon to Spires, and asked Spires how much he would be willing to pay for the gun. While Spires was handling and looking at Carriker's unloaded gun, Haynes suddenly shot Carriker, setting off an exchange of gunfire inside the home. Betts was struck by multiple gunshots during the incident and died from his injuries. During an investigation of the incident, police discovered that three guns had been fired during the shootout, including a shotgun belonging to Beltz. One of Betts' fatal wounds came from the shotgun.

Carriker ultimately was charged with first-degree felony murder, as well as attempted distribution of a controlled substance; the latter offense serving as the inherently dangerous felony underlying the murder charge. The jury convicted Carriker of the drug offense but ultimately found him not guilty of murder.

2

The presentence investigation report scored Carriker's criminal history as D based on three person misdemeanors that were converted into a person felony for purposes of sentencing. Combined with the assigned severity level of his attempted distribution of a controlled substance conviction, the sentencing guidelines placed Carriker into a presumptive prison gridbox.

The week before sentencing, Carriker filed a motion for dispositional and/or durational departure. In support of his motion, Carriker attached approximately 100 letters from family, friends, and other individuals. The State filed a response in opposition to the motion, arguing there were no substantial and compelling reasons for a departure. As part of its response, the State noted that, contrary to one of the arguments in the defense motion, Carriker's own text messages demonstrated that he had a drug dealing business for months before the crime of conviction. The State advised that it planned to offer the text messages at sentencing. The day before the hearing, the State delivered to the district court (but did not file) 420 pages of text messages to the court.

The sentencing hearing was held on September 25, 2015. After hearing arguments from counsel and allowing Carriker to speak on his own behalf, the district court granted Carriker's motion for dispositional departure and imposed a sentence of probation for 36 months with an underlying sentence of 62 months in prison. The State appeals the departure sentence.

ANALYSIS

The State argues the reasons given by the district court for departing from the presumptive sentence in this case were either not supported by substantial competent evidence and, even if they were, did not constitute substantial and compelling reasons to depart. Additionally, the State argues that the court should have considered all of the text messages the State provided, rather than only those admitted at trial.

*Preservation*

Before addressing the State's arguments, we first must address Carriker's claim that we should dismiss this appeal because the State failed to object to inadequate findings of fact and conclusions of law at the sentencing hearing or in a later motion. Under Supreme Court Rule 165 (2017 Kan. S. Ct. R. 214), the district court must state its findings of fact and conclusions of law when deciding matters not submitted to a jury. A party must object to inadequate findings of fact and conclusions of law to preserve the issue for appeal. This gives the district court the opportunity to correct the inadequate findings. *Fischer v. State*, 296 Kan. 808, 825, 295 P.3d 560 (2013).

But the State's argument on appeal is not that the district court made inadequate findings of fact and conclusions of law. Rather, the State's claim is that the court's decision to grant a downward departure was "not supported by substantial competent evidence or, alternatively, did not constitute substantial and compelling bases to depart." Supreme Court Rule 165 does not apply under these circumstances and thus does not preclude us from addressing the State's appeal.

*Dispositional departure*

A sentencing court is required to impose the presumptive sentence set forth in the sentencing guidelines grid unless the court finds substantial and compelling reasons to impose a departure sentence. K.S.A. 2016 Supp. 21-6815(a). If the sentencing court determines that a departure is warranted, it must "state on the record at the time of sentencing the substantial and compelling reasons for the departure" and make findings of fact as to those reasons. K.S.A. 2016 Supp. 21-6815(a); K.S.A. 2016 Supp. 21-6817(a)(4).

4

K.S.A. 2016 Supp. 21-6815(c)(1) contains a nonexclusive list of departure factors for the sentencing court to consider when determining whether substantial and compelling reasons exist for a departure sentence. But a sentencing court also may consider nonstatutory factors "'as long as there is evidence in the record to support such factors and the use of the factors would be consistent with the intent and purposes of the sentencing guidelines.' [Citations omitted.]" *State v. Hines*, 296 Kan. 608, 616, 294 P.3d 270 (2013). Legislative purposes of the guidelines are to reduce prison overcrowding, protect public safety, and standardize sentences. *State v. Favela*, 259 Kan. 215, 233-34, 911 P.2d 792 (1996).

The district court articulated the following reasons on the record for imposing a departure sentence in this case: Carriker did not engage in any unlawful conduct during the 29 months in which the case against him was pending, he completed drug and alcohol treatment and attended Alcoholic Anonymous (AA) meetings during that time period, he had no prior felonies in his criminal history, and there were existing programs in the community to promote his rehabilitation. Although the State asserts the district court also based its decision to depart on the fact that it had granted a downward departure in two previous, similar cases, our review of the sentencing transcript leads us to conclude that the court shared this information before setting forth its reasons for departure and did so in order to reiterate that Carriker was being sentenced for the crime of conviction, attempted distribution of marijuana, as opposed to the crimes charged:

> "[THE COURT]: What I have had difficulty separating out, what I think a lot of people in this case have had difficulty separating out is that Mr. Carriker was only convicted of attempted distribution of marijuana. While it's still a severe and serious felony, it's not the first degree murder, the felony murder that he was acquitted of. The other folks that have been sent to prison or are pending going to prison were convicted or pled to some charge relating to the killing. That's a difference in my mind. A substantial difference.

5

"Trying to keep it business like and not personal again, as my wife suggested, I've recently had cases come in front of me. I won't mention the name, but here's a 14 CR case where the defendant pled on August 3rd, 2015. There was a joint recommendation for dispositional departure to probation on the charge of possession of marijuana with the intent to distribute. It had a total . . . of a little over 50 grams of marijuana.

"I can't find it at the moment, but there was another case similarly pled in front of me, I took the plea. It also [was] presumptive prison for sale or attempted sale of marijuana, distribution of marijuana. Joint downward dispositional departure to probation."

It is only after these comments that the district court informed the parties of its decision to grant the motion to impose a dispositional departure sentence and then provided the reasons justifying the departure. Based on our finding that it was not relied on, we will not review the district court's sentencing practices in other cases as a factor to justify the court's departure in this case.

*Substantial competent evidence*

The State's first challenge to the district court's departure sentence is that some of the reasons given by the court for departing from the presumptive sentence were not supported in the record. When the issue presented is whether the record supports the reason stated by the court for departing from a presumptive sentence, we review for substantial competent evidence. *State v. Spencer*, 291 Kan. 796, 807, 248 P.3d 256 (2011).

*Drug and alcohol treatment/AA meetings*

In support of his request for dispositional and/or durational departure, Carriker's motion advised the district court that he had taken and completed drug and alcohol classes while the case was pending and had been going to weekly AA meetings as well. Citing *State v. Crawford*, 21 Kan. App. 2d 859, 861, 908 P.2d 638 (1995), Carriker

6

argued that "efforts at rehabilitation and treatment" such as these are substantial and compelling reasons to impose a downward departure sentence. At the sentencing hearing, counsel reiterated this argument to the court: "As I stated on page three of my motion, since this case has began [*sic*], Mr. Carriker has taken and completed drug and alcohol classes. He's been going to weekly [AA] meetings." The court ultimately cited Carriker's efforts at rehabilitation and treatment—the completed drug and alcohol treatment and the weekly AA meetings—as a substantial and compelling factor in deciding to impose a downward dispositional departure.

But the State argues the record does not support the district court's finding because there is no documentation in the record to establish that Carriker completed a drug and alcohol treatment program or is regularly attending AA meetings. In the absence of such documentation, the State claims this factor is not supported by substantial competence evidence.

We are not persuaded by the State's argument. In determining whether substantial and compelling reasons exist for a departure sentence, K.S.A. 2016 Supp. 21-6815(d) requires the court to consider "(1) Any evidence received during the proceeding; (2) the presentence report; (3) written briefs and oral arguments of either the state or counsel for the defendant; and (4) any other evidence relevant to such aggravating or mitigating circumstances that the court finds trustworthy and reliable." In applying this subsection of the statute, our Supreme Court has held that a sentencing court is entitled to rely on statements provided by counsel without requiring counsel to provide corroborating documentation if the court has determined the statements are credible. *Favela*, 259 Kan. at 228-29. In *Favela*, trial counsel stated the defendant was impaired when committing the offense. The sentencing court determined that trial counsel's statement was credible and thus relied on it to grant a downward departure. 259 Kan. at 229. Our Supreme Court affirmed. Similarly, in *State v. Bernal*, No. 105,536, 2012 WL 3135712, at *5-6 (Kan. App. 2012) (unpublished opinion), the sentencing judge was permitted to rely on trial

7

counsel's statements regarding the nature of the defendant's prior convictions. "Once the trial judge determines the credibility of the defense counsel's statements and decides to rely upon the statements, a reviewing court should not reweigh the credibility of the counsel's statements." *Favela*, 259 Kan. at 229.

As stated above, counsel submitted to the district court both in her motion for dispositional and/or durational departure and in person at the sentencing hearing that Carriker had taken and completed drug and alcohol classes while the case was pending and had been going to weekly AA meetings. The district court found counsel's statements credible, as is shown by the fact that these facts were adopted as part of the basis for departure. The court was entitled to rely on those statements after determining they were credible, and we are not permitted to reweigh the credibility of trial counsel's statements on appeal. *Favela*, 259 Kan. at 228-29. For these reasons, we find substantial competent evidence supports the district court's finding that Carriker completed drug and alcohol counseling and was regularly attending AA meetings during the period of time his case was pending.

*No prior felony conviction*

In granting Carriker's downward departure motion, the district court relied in part on Carriker's lack of any prior felony convictions. But the State argues the record does not support the court's finding. Specifically, the State claims that three of Carriker's misdemeanors were converted to a felony for purposes of calculating his criminal history score and the classification of the crime after it has been converted should be the one used when deciding whether to depart.

Interpretation of a statute is a question of law over which appellate courts have unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). When a statute is plain and unambiguous, an appellate court should not speculate about the

legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016). Generally, "'appellate courts cannot delete vital provisions or add vital omissions to a statute if the legislature failed to enact the change as intended under any reasonable interpretation of the language used, regardless of the legislature's intention. Only the legislature may remedy these types of error.' [Citation omitted.]" *Eastman v. Coffeyville Resources Refining & Marketing*, 295 Kan. 470, 476, 284 P.3d 1049 (2012); see also *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 725, 317 P.3d 70 (2014); *State v. Ardry*, 295 Kan. 733, 737, 286 P.3d 207 (2012).

K.S.A. 2016 Supp. 21-6811(a) states that "[e]very three prior adult convictions or juvenile adjudications of class A and class B person misdemeanors in the offender's criminal history, or any combination thereof, shall be rated as one adult conviction or one juvenile adjudication of a person felony for criminal history purposes." The key word here is "rated." To rate an item is to give it a proportional or relative value. See Black's Law Dictionary 1452 (10th ed. 2014). By using this term, it is reasonable to conclude that the legislature intended the court to give three misdemeanor offenses the proportional value of one person felony adjudication for the purpose of calculating an offender's criminal history score. But there is nothing in the statute to suggest that doing so changes the underlying nature of the original offenses as misdemeanors. See *State v. Smith*, 49 Kan. App. 2d 88, 91, 304 P.3d 359 (2013) (holding that defendant's six prior misdemeanor juvenile adjudications had decayed and could not be used against him despite having been rated as felonies in a previous case). Because the nature of the prior misdemeanor offenses never changed, we find substantial competent evidence supports the district court's finding that Carriker had no prior felony convictions.

*Existing programs in the community*

One of the factors relied on by the district court in departing from the presumptive prison sentence here was the existence of programs in the community to promote Carriker's rehabilitation. The State argues that substantial and competent evidence does not support the court's finding that this factor existed. We disagree.

As a preliminary matter, we note the district court ordered Carriker's release on probation was subject to the supervision of community corrections rather than court services. "'[P]robation'" is defined by statute as "a procedure under which a defendant, convicted of a crime, is released by the court after imposition of sentence, without imprisonment except as provided in felony cases, subject to conditions imposed by the court and subject to the supervision of the probation service of the court or community corrections." K.S.A. 2016 Supp. 21-6603(g). A "'community correctional services program'" is defined as "a program which operates under the community corrections act and to which a defendant is assigned for supervision, confinement, detention, care or treatment, subject to conditions imposed by the court." K.S.A. 2016 Supp. 21-6603(b). Relevant here, K.S.A. 2016 Supp. 75-5291 of the community corrections act describes the highly intensive supervision, the broad level of support, and the wide range of services available to felony offenders who are assigned to a community correctional services program for supervision during probation:

"(a)(1) The secretary of corrections may make grants to counties for the development, implementation, operation and improvement of community correctional services that address the criminogenic needs of felony offenders including, but not limited to, adult intensive supervision, substance abuse and mental health services, employment and residential services, and facilities for the detention or confinement, care or treatment of offenders as provided in this section . . . .

(2) Except as otherwise provided, placement of offenders in a community correctional services program by the court shall be limited to placement of adult offenders, convicted of a felony offense:

10

. . . .

(B) whose severity level and criminal history score designate a presumptive prison sentence on either sentencing guidelines grid but receive a nonprison sentence as a result of departure." K.S.A. 2016 Supp. 75-5291.

In addition to intensive supervision by community corrections, the district court ordered Carriker to enroll in and attend an anger management program with a focus on impulse control. The court also ordered Carriker to submit to a drug and alcohol evaluation within 30 days of being released from the 60-day jail sentence imposed in conjunction with the sentence of probation and to *follow all recommendations* made by the evaluator.

Based on our review of the record, we find the following to be substantial and competent evidence in the record to support the district court's finding that there are programs in the community that will promote Carriker's rehabilitation: (1) the anger management program; (2) the drug and alcohol evaluation with orders to follow up on all recommendations by the evaluator; and (3) the community corrections program providing intensive supervision, support, and community services to Carriker during the period of his probation.

*Substantial and compelling reasons to depart*

Having determined there is substantial competent evidence in the record to support the district court's findings challenged by the State, we turn to the State's claim that the reasons given by the court for imposing a departure sentence were not substantial and compelling under the facts of this case. "'To be substantial the reason must be real, not imagined, and of substance, not ephemeral.' [Citation omitted.] A reason is 'compelling' when it 'forces the court, by the facts of the case, to abandon the status quo and to venture beyond the sentence that it would ordinarily impose.' [Citation omitted.]" *State v. Bird*, 298 Kan. 393, 397, 312 P.3d 1265 (2013).

11

Because the issue presented is whether the reasons stated by the district court to justify departure in this particular case constitute substantial and compelling reasons for departure, we apply an abuse of discretion standard. *Spencer*, 291 Kan. at 807. A judicial action constitutes an abuse of discretion if it is based on an error of law or fact, or no reasonable person would take the view adopted by the district court. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *State v. Robinson*, 303 Kan. 11, 90, 363 P.3d 875 (2015), *cert. denied* 137 S. Ct. 164 (2016), *disapproved on other grounds by State v. Cheever*, 304 Kan. 866, 375 P.3d 979 (2016).

On appellate review, we do not give greater deference to a sentencing court because it relied on statutory factors rather than nonstatutory factors for its decision to impose a departure sentence. *State v. Martin*, 285 Kan. 735, 747, 175 P.3d 832 (2008). Regardless of whether the district court cites statutory factors, nonstatutory factors, or a combination of both, "'[r]easons which may in one case justify departure may not in all cases justify a departure.'" *Bird*, 298 Kan. at 397. "When even one factor relied upon by the sentencing court is substantial and compelling, the departure sentence should be upheld. Conversely, each individual factor, standing alone, need not be sufficient to justify the departure if the reasons collectively constitute a substantial and compelling basis for departure. [Citation omitted.]" 298 Kan. at 398.

Again, the district court articulated the following reasons on the record for imposing a departure sentence in this case: Carriker had not engaged in any unlawful conduct during the 29 months in which the case against him was pending, he completed drug and alcohol treatment and attended AA meetings during that time period, he had no prior felonies in his criminal history, and there were existing programs in the community to promote his rehabilitation.

*Amenability to probation*

The district court determined Carriker was amenable to probation based on evidence presented that during the past 29 months he had complied with all laws generally as well as the specific bond conditions of his pretrial release. The State argues this factor does not rise to the level of a substantial or compelling reason for departure because Carriker was under close supervision during the entire 29 months and would have gone to jail for violating the terms of his bond if he had engaged in any unlawful conduct.

While a showing of amenability to probation is not a departure factor expressly stated in the statute, a sentencing court may properly consider this factor as a legitimate reason to impose a dispositional departure sentence. Typically, a lack of amenability to probation is shown by the defendant's conduct and attitude when given prior opportunities at probation or other forms of supervised release. See *State v. Rodriguez*, 269 Kan. 633, 647, 8 P.3d 712 (2000). But here, the opposite is true. During the 29-month time period in which this case was pending, Carriker demonstrated that he was able to follow court orders, successfully enroll in and complete a drug and alcohol treatment program, participate in community support groups geared toward sustaining rehabilitation, and engage in activities that were not harmful to the community. These behaviors showed Carriker was amenable to probation and could abide by the district court's terms and conditions of release; thus, the court properly relied on them to impose a dispositional departure.

Notably, the State cites no caselaw or other authority to support its argument that a defendant's compliance with the law pending trial must be motivated by something other than bond release conditions in order to qualify as a substantial or compelling reason to impose a departure sentence. Accordingly, we find the district court did not abuse its discretion in finding Carriker's compliance with the law and the terms and conditions of

13

his pretrial release for the 29 months that elapsed between the date he was charged and the date he was sentenced qualified as a substantial or compelling reason to impose a departure sentence.

*Rehabilitation efforts while case pending*

The State contends Carriker's completion of drug and alcohol treatment and attendance at AA meetings were not "overly ambitious" and thus is not a substantial or compelling reason for departure. As the State points out, there is no information in the record regarding the details of the drug and alcohol program Carriker completed. Nevertheless, rehabilitation efforts are a legitimate factor to consider for purposes of a downward departure. Although this factor may not be enough on its own to constitute a substantial and compelling reason for the district court to have departed in this case, we find the court did not abuse its discretion in using it as a contributing factor that supports the downward dispositional departure ultimately imposed. See *State v. Crawford*, 21 Kan. App. 2d 859, 861, 908 P.2d 638 (1995) (approving downward dispositional departure sentence because defendant was maturing and less likely to commit crimes, was raising three children, had "'impressive'" employment record, and had made "'substantial efforts'" at rehabilitation).

*No prior felony conviction*

Next, the State argues the lack of a prior felony conviction in Carriker's criminal history does not rise to the level of a substantial and compelling reason for the district court to depart from the presumptive sentence in this case. In support of this argument, the State contends criminal history can never be used to justify departure and even if it could, Carriker's criminal history shows he is a danger to society.

14

The State is correct that criminal history generally cannot be used to justify a departure sentence because the presumptive sentence already takes a defendant's criminal history into account. But the sentencing court can consider factors not taken into account in the presumptive sentence, such as what the criminal history scheme says about the defendant's amenability to probation, need for treatment, or future dangerousness. *State v. Hawes*, 22 Kan. App. 2d 837, 840, 923 P.2d 1064 (1996); *State v. Fisher*, No. 105,626, 2011 WL 6385648, at *2 (Kan. App. 2011) (unpublished opinion) (defendant's extensive criminal history showed nonamenability to probation, upward departure imposed).

Here, the district court was aware of Carriker's criminal history. The judge appeared to consider the lack of a felony conviction in Carriker's criminal history to support a conclusion that Carriker was amenable to probation because the judge listed it alongside the fact that Carriker complied with the law and conditions of pretrial release pending trial, completed drug and alcohol classes, and regularly attended AA meetings. And there is nothing in the record to indicate that Carriker previously failed at probation attempts or that his criminal history was related to drugs. See *Fisher*, 2011 WL 6385648, at *2. Based on the record, we find the district court properly considered the lack of a prior felony conviction in Carriker's criminal history for purposes of determining his amenability to probation. See *Hawes*, 22 Kan. App. 2d at 840. In turn, we find the court did not abuse its discretion in finding the lack of a prior felony conviction in Carriker's criminal history was a substantial and compelling reason to impose a downward dispositional departure.

*Existing programs in the community*

Finally, the State argues the fact that an anger management program exists in the community will not promote Carriker's rehabilitation—and thus cannot be a substantial and compelling reason to depart in this particular case—because the program is unrelated to his crime of conviction, which was organizing a drug deal to make money.

Although the State focuses solely on the district court's order for Carriker to enroll in and successfully complete an anger management program, we find it significant that the court directed that the program Carriker enrolls in must specifically address the issue of impulse control. Carriker's crime of conviction was attempted sale of marijuana. "Low self-control has been associated with problematic drinking and substance use, property crime, dating violence (both psychological and physical), and other types of violent crime, as well as offender noncompliance. [Citation omitted.]" Samantha S. Clinkinbeard, *What Lies Ahead: An Exploration of Future Orientation, Self-Control, and Delinquency*, 39(1) Crim. Just. Rev. 19, 21 (2014). It is reasonable to conclude that a program focusing on impulse control practices and techniques would promote Carriker's rehabilitation.

But we also find it significant that the district court ordered Carriker's release on probation to be subject to the intensive supervision of community corrections rather than court services. As an offender assigned to a community correctional services program for supervision during probation, Carriker will be subject to highly intensive supervision and provided a broad level of support and a wide range of services. K.S.A. 2016 Supp. 21-6603(b); K.S.A. 2016 Supp. 75-5291. And the court also ordered Carriker to submit to a drug and alcohol evaluation within 30 days of release from the 60-day jail sentence imposed in conjunction with his probation and to *follow all recommendations* made by the evaluator. The district court did not abuse its discretion in finding that the existence of programs in the community that would promote Carriker's rehabilitation was a substantial and compelling reason to impose a downward dispositional departure.

*Cumulative factors*

As previously stated, "each individual factor, standing alone, need not be sufficient to justify the departure if the reasons collectively constitute a substantial and compelling basis for departure." *Bird*, 298 Kan. at 398. A substantial reason is one that is real, with substance, and not imagined, and compelling reason is one that persuades the

16

court to impose a sentence it ordinarily would not impose. *State v. Blackmon*, 285 Kan. 719, 724, 176 P.3d 160 (2008). If a sentencing court relies on nonstatutory factors, as the court did here, the factors must be "consistent with the intent and purposes of the sentencing guidelines" in order to constitute substantial and compelling reasons to justify a departure. 285 Kan. at 725. The following are principles and purposes of the sentencing guidelines:

> "'• Prison space should be reserved for serious/violent offenders.
> • The degree of sanctions imposed should be based on the harm inflicted.
> • Sanction should be uniform and not related to socioeconomic factors, race, or geographic location.
> • Penalties should be clear so everyone can understand exactly what has occurred after such are imposed.
> • Incarceration should be reserved for serious violent offenders who present a threat to public safety.
> • The State has an obligation to rehabilitate those incarcerated; but persons should not be sent to prison solely to gain education or job skills, as these programs should be available in the local community.
> • The system must be rational to allow policymakers to allocate resources. [Citations omitted.]'" *Favela*, 259 Kan. at 233.

When considered together, the fact that Carriker had not engaged in any unlawful conduct during the 29 months in which the case against him was pending, that he completed drug and alcohol treatment and attended AA meetings during that time period, that he had no prior felonies in his criminal history, and that there were existing programs in the community to promote his rehabilitation are substantive real reasons that persuaded the district court in this case to impose a sentence it ordinarily would not impose; thus, the stated reasons are both substantial and compelling. Our standard of review is abuse of discretion. We cannot say that no reasonable person would have taken the district court's view, or that the decision was based on an error of law or fact. For this reason, we find

the court did not abuse its discretion and affirm the decision to impose a downward dispositional departure sentence.

*Text messages*

The day before sentencing, the State delivered to the district court (but did not file) 420 pages of text messages. At the hearing the next day, the State said it intended to use the messages to refute numerous letters written by Carriker's friends and family alleging that the drug deal was a one-time incident. The court advised the State that, because of the narrow timeframe, it had not been able to read the text messages and therefore would consider only those text messages that were admitted at trial. Undeterred, the State requested leave to at least reference the text messages as part of its argument opposing departure and to make a record for purposes of an appeal by filing the text messages under seal to protect the identities and telephone numbers of individuals not related to the case.

At this point, Carriker objected to introduction of the text messages into evidence altogether, arguing they were untimely submitted and not relevant to the sentencing issues before the district court. After the State responded to Carriker's objection, the court and the State engaged in the following colloquy:

> "THE COURT:  That's it. I'll allow you to admit them for the record. I have not had a chance to review them. I'm going to confine myself to those texts and e-mails that were sent and used during trial.
> "[THE PROSECUTOR]:  Can I argue them, though, in response to her motion to depart?
> "THE COURT:  Can you what?
> "[THE PROSECUTOR]:  Can I argue them in response to her motion to depart?
> "THE COURT:  Can you argue these things?
> "[THE PROSECUTOR]:  Yes.
> "THE COURT:  That I'm not going to consider? No.

18

"[THE PROSECUTOR]: Well, Judge, then I'm asking you not to consider their letters because their letters are saying he's not a drug dealer. And so can't rebut that, then the Court is put in a position that you're going to consider something and not get the full truth of what actually occurred in Mr. Carriker's life.

"THE COURT: You can admit the exhibits for the appellate purposes. I'm going to confine remarks, arguments to what was admitted at trial."

On appeal, the State asserts the district court erred by failing to consider the approximately 420 text messages the State provided to the court the day before the hearing. In support of error, the State asserts the district court refused to consider the text messages "ostensibly because the court did not have time to review the text messages." As a preliminary matter, we disagree with the State's characterization of the reason why the court decided not to consider the text messages. But even if that were the reason why the court did not consider them and it was error to do so, we find any error in that decision to be invited by the State given its failure to request a continuance of the sentencing hearing to allow the court the time it needed to review the evidence at issue.

Even if the error had not been invited, the State still does not prevail. Based on our review of the record, it appears the district court opted not to consider the 420 text messages for purposes of deciding the departure issue because the messages simply were not relevant to any valid reason for deciding whether to impose a departure sentence. But even if we again presume for purposes of discussion that the court erred in failing to consider the 420 text messages, the erroneous exclusion of evidence is subject to review for harmless error under K.S.A. 2016 Supp. 60-261:

"Unless justice requires otherwise, no error in admitting or excluding evidence, or any other error by the court or a party, is ground for granting a new trial, for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."

19

Here, the text messages were offered to refute letters written by Carriker's family and friends asserting that the drug deal giving rise to this case was a "one time deal." The district court gave "those letters very little, if any, credibility." And significantly, Carriker's participation in other drug sales prior to the one at issue in this case was not a factor the district court relied on in considering the motion to depart. Thus, the court's failure to consider text messages that may have demonstrated the drug sale at issue was not an isolated incident, even if error, was harmless.

Affirmed.

* * *

ATCHESON, J., dissenting: Defendant Kyler Wayne Carriker orchestrated a marijuana sale in which he and his cohorts came bearing both guns and drugs. And he invited the buyers to bring their firearms after he sensed they were uneasy about the arrangements. During the deal, something sparked a gunfight that left one of Carriker's partners dead, while the putative buyers took off with the marijuana and the money. A jury convicted Carriker of attempted distribution of marijuana but acquitted him of felony murder for the shooting death. At sentencing, the district court granted Carriker a dispositional departure from presumptive imprisonment to probation. The State has appealed that deviation, so the district court's reasons for disregarding the standard statutory sentence form the nub of this appeal. A studied review of the sentencing hearing shows the district court relied on both factually erroneous and legally unjustified reasons for its determination, while disregarding salient circumstances of Carriker's conduct. The majority fails to capture the scope of the district court's mistakes or appreciate the significance of them. I, therefore, respectfully dissent from the decision affirming Carriker's sentence. I would vacate the sentence and remand for a new sentencing hearing that fully and fairly follows the law and reflects the facts.

20

*Factual Background and Legal Principles Governing Departure Sentences*

A district court must impose a presumptive guidelines sentence "unless [it] finds substantial and compelling reasons" for a departure. K.S.A. 2016 Supp. 21-6815(a). The district court has to articulate the reasons warranting a departure at the sentencing hearing. K.S.A. 2016 Supp. 21-6815(a). A downward departure may be durational, shortening a presumptive term of imprisonment; dispositional, replacing presumptive incarceration with probation; or both.

Based on Carriker's criminal history, the marijuana conviction presumptively required he be sent to prison. Carriker's lawyer filed a motion for a departure to probation and, in the alternative, for a reduced term of imprisonment. The State filed a response and sought a presumptive guidelines sentence. The district court heard argument on the motion at the sentencing and then outlined the reasons for granting Carriker probation as part of its pronouncement of the sentence from the bench. The district court sentenced Carriker to 62 months in prison and placed him on probation for 36 months subject to his serving 60 days in the county jail and complying with other conditions. The State has appealed the departure to probation. See K.S.A. 2016 Supp. 21-6820(a). Carriker had filed no cross-appeal.[1]

[1]The district court characterized the 62-month sentence as being the aggravated or highest presumptive term of imprisonment for a defendant convicted of a severity level 3 drug offense with a criminal history in category D. The presentence investigation report identified the presumptive sentencing range as 54 to 62 months. I can't tell where those numbers come from. The crime occurred on April 18, 2013, so the sentencing statutes and grid in effect then should govern. *State v. Overton*, 279 Kan. 547, Syl. ¶ 5, 112 P.3d 244 (2005). The presumptive sentence would have been 60 to 68 months. See K.S.A. 2012 Supp. 21-6805(a) (drug grid in effect as of July 1, 2012). The range in the PSI resembles (but does not match) that for a defendant in criminal history category E. The presumptive sentence applicable to Carriker, whatever its duration, clearly calls for imprisonment rather than probation.

21

The legislature has adopted a nonexclusive list of mitigating factors that may be considered in granting a downward departure. K.S.A. 2016 Supp. 21-6815(c)(1). But the district court may weigh other "substantial and compelling" circumstances favoring mitigation. To be "substantial," the circumstance must be "real" rather than "imagined" or "ephemeral." And to be "compelling," it must—based on the facts of the case—"force[] the court . . . to abandon the status quo" and impose a sentence it would not ordinarily consider. *State v. Hines*, 296 Kan. 608, 616, 294 P.3d 270 (2013). Whether a circumstance could warrant a departure sentence in some case, though not necessarily in the case at hand, presents a question of law. 296 Kan. at 616. A district court's decision to rely on a legally appropriate circumstance in a given case entails judicial discretion and may be reviewed for abuse. *State v. Reed*, 302 Kan. 227, 249, 352 P.3d 530 (2015). A district court exceeds that discretion if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012).

*Errors in District Court's Decision to Grant Dispositional Departure*

With those legal principles in mind, I review the grounds I understand the district court to have relied on in granting Carriker a downward departure to probation. I draw those reasons from the transcript of the sentencing hearing, since the district court did not prepare a written ruling encapsulating its findings. And I explain why they do not support the departure to probation.

•The district court determined that a departure to probation would be warranted because Carriker had no felony convictions. Given the way presumptive sentences are calculated in Kansas, the absence of past felonies cannot be a substantial and compelling

22

reason supporting a departure from imprisonment to probation. That's because a presumptive sentence is directly tied to a defendant's criminal history, thereby taking account of past felonies or the absence of any felonies.

The legislature has adopted two sentencing grids that establish presumptive terms of incarceration and whether a defendant presumptively should be imprisoned or placed on probation. One grid applies to most nondrug felonies, and the other applies to felony drug crimes, such as Carriker's marijuana conviction here. Both grids work the same way. The grid has a vertical axis listing severity levels of felony offenses and a horizontal axis listing criminal history categories based on past convictions, including felonies and certain misdemeanors. A given defendant's presumptive sentence is found in a box on the grid at the intersection of the severity level of the defendant's crime of conviction and his or her criminal history category. The box contains three numbers reflecting the low, midlevel, and high presumptive periods of incarceration expressed in months. Each box on the grid is also designated a presumptive prison box, a presumptive probation box, or a border box.[2]

[2] A presumptive probation box requires the defendant be placed on probation unless the district court imposes an upward dispositional departure to imprisonment. A border box permits the district court to place a defendant on probation without making formal departure findings if there are appropriate treatment programs in the community and the particular defendant is amenable to treatment without jeopardizing community safety.

If the combination of the crime of conviction's severity and the defendant's criminal history places him or her in a presumptive prison box, then the district court must order the defendant be incarcerated unless it grants a downward dispositional departure. So a particular defendant's criminal history, including the presence or absence of past felonies, drives both the presumptive sentence he or she should receive and whether he or she should be sent to prison. The result reflects a public policy determination by the Kansas Legislature as to an appropriate punishment based on its

23

exercise of police powers. See *State v. Bolin*, 200 Kan. 369, 370-71, 436 P.2d 978 (1968) (legislature validly exercises police power in defining particular acts as criminal); *Meehan v. Kansas Dept. of Revenue*, 25 Kan. App. 2d 183, 190, 959 P.2d 940 (1998) (legislature acts within police powers to criminalize and set punishment for driving under the influence).

Here, Carriker's three previous convictions for person misdemeanors placed him in a presumptive prison box for the marijuana conviction. Those convictions were treated as the equivalent of one person felony for criminal history purposes. If Carriker also had a previous felony conviction, he would have been in another presumptive prison box mandating a longer term of incarceration. The sentencing grid, therefore, reflected the legislature's determination that a person with Carriker's criminal history—a history without a felony—convicted of attempted distribution of marijuana should go to prison. That presumptive disposition already took account of Carriker's criminal history, so his criminal history couldn't be a reason to depart upward or downward. If the district court's approach were allowed, criminal history would cease to be a substantive component in fixing sentences. A district court would be able to grant a dispositional departure to a defendant with one past felony conviction simply because he or she didn't have two. The notion upsets a cornerstone of the sentencing guidelines—that similarly situated defendants should receive substantially similar punishments for the same crimes. *State v. Huerta*, 291 Kan. 831, 836, 247 P.3d 1043 (2011).

The district court erred either as a matter of law or by stepping outside the appropriate legal framework of the sentencing guidelines in departing downward based on the absence of a felony in Carriker's criminal history.

•The district court found that Carriker qualified for the statutory mitigating factor based on the "harm or loss" associated with the crime being "less than typical." K.S.A. 2016 Supp. 21-6815(c)(1)(E). The district court reasoned that Carriker and his associates

24

gained nothing from the drug deal—the putative buyers kept their money and absconded with the marijuana during the gunfight—thereby rendering any harm or loss atypically low for a drug trafficking offense. The majority doesn't mention this finding. The district court's conclusion can be fairly described as astonishing. And the reasoning behind it illustrates what seems to be a broader problem with the district court's overall approach to sentencing in this case.

I find it unfathomable that the harm resulting from a drug deal that collapses into a gun battle leaving one of the participants dead could somehow be characterized as unusually benign, thereby justifying a relaxed punishment for a surviving principal. We may fairly assume that buyers and sellers in comparatively large drug deals frequently arrive armed and ready to forcefully protect their respective interests. And we may fairly assume that at least some of the time one side or the other sets up a deal as a pretext for an armed robbery. So gun violence and the resulting mayhem may be a predictable, though not necessarily commonplace, cost of trading in illegal drugs. None of that, however, warrants a *lesser* punishment in this case or in some other drug case in which the defendant wound up the victim of a rip-off or someone was shot or killed.

During the hearing, the district court indicated it did not believe it could consider the shooting and the resulting homicide as a circumstance bearing on the sentence for attempted distribution of marijuana because Carriker had been acquitted of the felony murder charge. But the district court came to an incorrect legal conclusion. The district court could not, of course, sentence Carriker for felony murder. But the district court could have and should have considered the facts surrounding the marijuana deal in fixing punishment for that offense. The jury plainly found Carriker to have been present at and a participant in the marijuana deal, and the acquittal doesn't negate the fact that another participant was shot and killed during the deal. See *State v. Hargrove*, 48 Kan. App. 2d 522, 559-61, 293 P.3d 787 (2013) (Even if a jury acquits a defendant of one charge, the court may consider evidence common to that charge and a second charge in determining

25

the sufficiency of the evidence supporting the jury's guilty verdict on the second charge.). In turn, the district court can take account of all of the factual circumstances of the crime of conviction in fashioning an appropriate sentence. *State v. Williams*, No. 114,525, 2017 WL 129896, at *5-6 (Kan. App. 2017) (unpublished opinion) (evidence common to crime of conviction and charge on which defendant acquitted properly considered at sentencing).

By the district court's logic, Carriker was no more or less blameworthy or deserving of punishment than a person who offered a giftwrapped box containing an ounce of marijuana to an acquaintance as a birthday present not knowing the recipient to be working as an undercover government agent. Both Carriker and that defendant would be guilty of severity level 3 drug offenses arising from marijuana distribution. The hypothetical gift giver actually might be deserving of fair consideration for a mitigated punishment based on K.S.A. 2016 Supp. 21-6815(c)(1)(E). To say the same about Carriker requires an abandonment of logic and a blindness to reality. Courts should yield to neither unless so compelled in the service of an inescapable legislative command demanding illogic and sightlessness. This is not such a case. The district court erred as a matter of law or by venturing outside the legal framework for sentencing in treating it as if it were.

•The district court relied on sentences it imposed in two earlier cases involving marijuana distribution in measuring Carriker's punishment. The transcript unmistakably shows the district court took the circumstances of those cases into account in determining how to punish Carriker. And the district court's comments strongly suggest it was influenced to grant Carriker a downward dispositional departure so the sentences in the three cases would roughly align. The district court erred, at the very least, in not notifying the parties of its intent to rely on those cases.

26

The majority simply writes off the district court's remarks about the other cases as some sort of idle musing without any significance—in a word, prattle. The transcript doesn't support that dismission. And I would generally assume district courts approach sentencings with sufficient deliberation and seriousness that their remarks have import unless the context plainly shows otherwise. Here, the district court referred to the cases immediately after going through and discussing the statutory mitigation factors in K.S.A. 2016 Supp. 21-6815(c) and shortly before pronouncing the formal sentence. The district court mentioned a couple of facts from one of the cases, made a point of noting its decision in each to grant a dispositional departure to probation, and alluded to those determinations as a means of taking a "business like" and "professional" approach to sentencing Carriker. Fairly read, the transcript demonstrates those cases formed an integral part of the district court's sentencing determination in this case. I take the district court's references to being business-like and professional as a product of its mistaken belief that it could not consider the fatal shooting in fashioning a sentence for Carriker. I rather readily infer the district court felt that limitation tested its sense of fairness.

As a general proposition, a court may not consider extrinsic information—information outside the record in a case—in making decisions in that case. I believe the district court's consideration of the two cases it had recently handled entails that sort of extrinsic information, given the specific and pointed discussion of them at the sentencing hearing. The problem, of course, is that neither the State nor Carriker received any advance notice the district court had relied, in part, on those cases, so they could not effectively argue why they were similar or dissimilar to the matter at hand.

Assuming a district court may consider extrinsic information at sentencing—an assumption I indulge without endorsement and for forensic purposes only—it has an obligation to inform the parties of that information sufficiently in advance of the hearing that they can reasonably respond. See *Vining v. State*, 827 So. 2d 201, 209-10 (Fla. 2002) (Any error in a judge's independent factual investigation was rendered harmless because

27

the judge made a timely disclosure of the information to the parties.); *State v. Hart*, 911 S.W.2d 371, 376-77 (Tenn. App. 1995) (discussing dangers of trial court conducting its own factual investigation). In *McClay v. Highway Commission*, 185 Kan. 271, 272, 341 P.2d 995 (1959), the Kansas Supreme Court rebuked a trial judge for independently speaking with an expert witness in a condemnation action after the verdict but before ruling on posttrial motions. Describing the judge's action as "an independent investigation" aimed at aiding his consideration of the case, the court said the conduct, though disclosed on the record to the parties, "was irregular and cannot be sanctioned or approved."

Here, the district court relied on its recollection of specific cases it had presided over, an exercise that did not require a direct investigation of documents or other sources of information outside the record in this case. But the district court's reliance on the particular factual circumstances of those cases as a measuring stick in this case is functionally indistinguishable and carries with it the same erosion of fair notice and due process protections. The district court, therefore, erred in weighing the outcomes in those cases in meting out a proper sentence to Carriker in this case.[3]

[3]What the district court did in this case should be contrasted with two quite different aspects of judicial decisionmaking. First, a court may (and often should) engage in independent legal research of published authorities beyond those the parties have cited. A court thereby becomes better informed about the law governing pending issues. Here, the district court effectively investigated not legal authority but extrinsic facts.

Second, district court judges obviously have recollections about cases over which they have presided. But judges should put those recollections aside to focus on the facts specific to the case they are then handling. Most judges presumably hold general views about sentencing in criminal cases. Some may be inclined to impose a high presumptive sentence in certain kinds of cases. Others may tend toward midrange presumptive sentences. There is nothing amiss with judges developing general sensibilities about issues they consider. Those sensibilities may be part and parcel of the wisdom that ideally accompanies experience. But judges must also have the wisdom to keep those sensibilities from turning into unyielding personal rules applied mechanically without

28

regard for or reflection upon the particular factual circumstances presented in the case then at hand.

•The district court held that Carriker's ability to remain law-abiding during the 29 months he was on bond favored a dispositional departure to probation. This is a logically and legally false construct akin to the ostensible basis rooted in Carriker's lack of a felony conviction. We expect people to obey the law. Doing so reflects a societal norm—that which is typical. When that norm becomes the measuring stick, the judicial process should treat persons who fit within it typically. As I have already set out, the sentencing grid establishes presumptive (or typical) punishments for crimes tied to the severity of the offense and the defendant's criminal history. Those punishments reflect a legislative policy determination that must guide judicial officers in their work.

In keeping with the legislative directive, a defendant typically should get no extra dispensation for being law-abiding. The appropriate benefit already has been incorporated into a sentencing formula that imposes enhanced penalties on recidivists and presumptively requires they be imprisoned. Had Carriker been convicted of a new crime during his time on bond, that offense would have increased his presumptive punishment in this case. It doesn't follow, however, that he should be eligible for a more favorable disposition than typical simply because he had done what is expected as typical during that time.

Moreover, Carriker's "good behavior" on bond isn't especially compelling evidence of reformation in and of itself. Had Carriker broken the law while on bond, the district court likely would have revoked his conditional release and ordered him to jail for the pendency of this case. Carriker's law-abiding behavior demonstrates not so much meritorious conduct deserving of reward as the absence of incorrigibility. That's precisely why a defendant's inability or unwillingness to conform to bond conditions can be considered in denying probation. See *State v. Rodriguez*, 269 Kan. 633, 647-48, 8 P.3d

29

712 (2000); *State v. Fleming*, No. 110,090, 2014 WL 2590113, at \*2-3 (Kan. App. 2014) (unpublished opinion). Accordingly, the district court's reason fails to support the resulting departure either as a matter of law or as falling outside the appropriate legal framework.

•The district court considered Carriker's participation in drug and alcohol abuse programs to be a factor in granting a departure. But the district court misunderstood what Carriker did and likely gave him considerably more credit than he deserved. Carriker, through his lawyer, represented that after being charged in this case, he "ha[d] taken and completed drug and alcohol classes" and had begun attending weekly Alcoholics Anonymous meetings. Carriker's lawyer made that representation both in the motion for a dispositional departure and at the sentencing hearing. But the record is bereft of any other information about those efforts.

The district court was not told when Carriker took the classes, how many sessions were involved, the curriculum, or even the name of the sponsoring organization. Carriker did not disclose whether the classes required in-person attendance or consisted of online study. Likewise, Carriker did not inform the district court when he began attending AA meetings. The district court mistakenly converted those sketchy assertions into a representation that Carriker had successfully undergone *treatment* for drug and alcohol abuse. Taking classes and undergoing treatment are not the same. The district court essentially relied on something that had never been presented in the evidence or argument. The district court erred in doing so.

*Conclusion*

The district court's decision to grant Carriker a dispositional departure to probation is riddled with legal errors and factual mistakes. The combined effect of those missteps renders the result reversible as an abuse of discretion. I see no reason to parse each

30

deficiency independently for reversible error. Some are substantially more significant than others. Moreover, the district court's failure to appreciate that it should consider the full factual tableau of the crime, including the fatal shooting of Carriker's associate, in assessing an appropriate sentence wholly undercuts the result. That error presents a foundational defect impermissibly constricting the district court's view of the relevant facts and the governing law to the State's disadvantage.

I offer no opinion on whether Carriker ultimately deserves a dispositional departure. The district court, however, did not appropriately arrive at that conclusion given its impermissibly limited view of the law and the facts. I would vacate Carriker's sentence and remand to the district court for a new sentencing hearing.