No. 105,805

BENJAMIN M. EASTMAN and MARCITA K. EASTMAN, as trustees of the Eastman Family 1999 Revocable Trust, *Plaintiffs*, v. COFFEYVILLE RESOURCES REFINING & MARKETING LLC, *Defendant*.

(284 P.3d 1049)

Opinion filed September 7, 2012.

*Randall K. Rathbun*, of Depew Gillen Rathbun & McInteer LC, of Wichita, argued the cause and was on the brief for plaintiffs.

*Arthur E. Rhodes*, of Smithyman & Zakoura, Chartered, of Overland Park, argued the cause, and *Lee M. Smithyman* and *Veronica L. Dersch*, of the same firm, and *Edmund S. Gross*, of CVR Energy, Inc., of Kansas City, were with him on the brief for defendant.

The opinion of the court was delivered by

MORITZ, J.: In 2007, Coffeyville Resources Refining and Marketing, LLC (Coffeyville Resources) accidentally released about 90,000 gallons of crude oil into floodwaters of the Verdigris River in Coffeyville. In 2010, Benjamin and Marcita Eastman, as Trustees of the Eastman Family 1999 Revocable Trust (the Eastmans), filed an action in federal court alleging the oil spill damaged their pecan grove. *Eastman v. Coffeyville Res. Ref. & Mktg., LLC*, No. 6:10-CV-01216-MLB (D. Kan. petition filed June 30, 2010). The

Eastmans initially asserted a continuing nuisance claim but later asserted a statutory right to recover damages under K.S.A. 65-6203 which requires "any person responsible for an accidental release or discharge of materials detrimental to the quality of the waters or soil of the state" to "[c]ompensate the owner of the property where the release or discharge occurred for actual damages incurred as the result of the release or discharge."

In the federal action, Coffeyville Resources admitted potential liability under K.S.A. 65-6203 but argued the Eastmans' claim was barred by the 2-year statute of limitations in K.S.A. 60-513(a)(4). But the Eastmans contended they timely filed their action under the 3-year statute of limitations in K.S.A. 60-512(2) which applies to "[a]n action upon a liability created by a statute other than a penalty or forfeiture." Specifically, the Eastmans argued K.S.A. 65-6203 creates an "absolute" liability different in kind than the strict liability doctrine applied under Kansas common law and therefore the 3-year limitation period applies.

The Honorable Monti L. Belot, United States District Court Judge, District of Kansas, certified six questions to this court under the Uniform Certification of Questions of Law Act, K.S.A. 60-3201 *et seq.* Four of those questions related to the Eastmans' continuing nuisance claim, but the Eastmans have abandoned that claim and now are pursuing only a claim under K.S.A. 65-6203. Thus, only two questions remain: (1) whether K.S.A. 65-6203 creates absolute liability, and (2) which statute of limitations, if any, applies to K.S.A. 65-6203?

### FACTUAL AND PROCEDURAL BACKGROUND

The following undisputed facts are set forth in the certification order:

"1. The Coffeyville Resources refinery, located adjacent to the Verdigris River in Coffeyville, Kansas, processes crude oil and its constituents on a continuous basis.

"2. Plaintiffs are trustees of property located near Coffeyville, Kansas, in close proximity to the Verdigris River, approximately two or more miles downstream of the Coffeyville Resources refinery.

"3. On July 1, 2007, an unprecedented 100 year flood of the Verdigris River necessitated an emergency shutdown of the Coffeyville Resources refinery.

"4. During the emergency shutdown, approximately 80,000 gallons (over 1900 barrels) of crude oil, 5,000 gallons of diesel oil, and 4,000 gallons of crude oil fractions were accidentally released into the flood waters.

"5. The crude oil release was terminated within an hour or two of its inception.

"6. Defendant mobilized clean-up crews, while monitored by the Environmental Protection Agency (EPA), to clean up oil on public and private property.

"7. Plaintiffs filed this lawsuit on June 30, 2010, alleging that oil carried by the flood waters impacted their pecan grove, thus causing a continuing nuisance.

"8. Plaintiffs allege that this incident is 'continuing' because defendant has not cleaned up the oil that impacted their pecan grove. Plaintiffs allege that oil remains on their property and continues to impact their annual pecan harvests."

## DISCUSSION

This court exercises unlimited review over certified questions which, by definition, are questions of law. *Burnett v. Southwestern Bell Telephone*, 283 Kan. 134, 136, 151 P.3d 837 (2007). Additionally, both questions in this case require statutory interpretation which is also subject to our unlimited review. *Unruh v. Purina Mills*, 289 Kan. 1185, 1193, 221 P.3d 1130 (2009).

The most fundamental rule of statutory interpretation is that the intent of the legislature governs if that intent can be ascertained. *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 607, 214 P.3d 676 (2009). Our first task in interpreting a statute is to read the plain language of the statute, giving ordinary words their ordinary meanings. *Padron v. Lopez*, 289 Kan. 1089, 1097, 220 P.3d 345 (2009).

### 1. *Does K.S.A. 65-6203 create absolute liability?*

With the first certified question, we are asked to determine whether K.S.A. 65-6203 creates absolute liability. To determine the nature of the liability, if any, created by the statute, it is helpful to first discuss the common-law approach to strict liability in Kansas.

### Strict Liability Under Kansas Common Law

We have defined strict liability as "liability imposed on an actor apart from either (1) an intent to interfere with a legally protected interest without a legal justification for doing so, or (2) a breach of duty to exercise reasonable care (*i.e.*, actionable negligence)." *Williams v. Amoco Production Co.*, 241 Kan. 102, 112-13, 734 P.2d 1113 (1987).

We recently clarified that under Kansas common law, all strict liability claims in tort are governed by the abnormally dangerous activity test from the Restatement (Second) of Torts §§ 519 and 520 (1976). *City of Neodesha v. BP Corporation*, (No. 101,183, opinion filed August 31, 2012, slip op. at 19-20, 25-26); see *Williams*, 241 Kan. at 114-15 (adopting the abnormally dangerous activity test as set forth in Restatement [Second] of Torts §§ 519 and 520). As cited in *Williams*, Restatement (Second) of Torts § 519 provides:

" '(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.

" '(2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.' " *Williams*, 241 Kan. at 114.

The *Williams* court also adopted Section 520 of the Restatement, which lists factors to be considered in determining whether an activity is abnormally dangerous:

" '(a) existence of a high degree of risk of some harm to the person, land or chattels of others;

" '(b) likelihood that the harm that results from it will be great;

" '(c) inability to eliminate the risk by the exercise of reasonable care;

" '(d) extent to which the activity is not a matter of common usage;

" '(e) inappropriateness of the activity to the place where it is carried on; and

" '(f) extent to which its value to the community is outweighed by its dangerous attributes.' " 241 Kan. at 114.

### Liability Under K.S.A. 65-6203

K.S.A. 65-6203 provides:

"(a) It shall be the duty of any person responsible for an accidental release or discharge of materials detrimental to the quality of the waters or soil of the state to: (1) Compensate the owner of the property where the release or discharge occurred for actual damages incurred as the result of the release or discharge, or as the result of corrective action taken or access to take corrective action, if the release or discharge occurred without any contribution to the contamination and without any causal connection to the release or discharge by any action of the owner or owner-permitted occupant of the property; and (2) comply with all existing rules and regulations and requirements of the secretary of health and environment designed to ensure the prompt correction of any such release or discharge for the protection of the public health and environment.

"(b) Any owner or subsequent purchaser of land, upon which there has occurred an accidental release or discharge of materials detrimental to the quality of the waters or soil of the state, which occurred without any contribution to the contamination and without any causal connection to the release or discharge by any action of the owner or the owner-permitted occupant of the property, shall not be liable for any costs of subsequent remedial action required as a result of changes in standards adopted after the time of such accident, if such owner or purchaser can demonstrate that: (1) The persons responsible for the correction of the release or discharge were allowed timely and adequate access to perform the duty imposed by subsection (a)(2), upon reasonable prior assurance that any actual damages incurred as the result of allowing access will be promptly reimbursed, and the secretary of health and environment, or the secretary's agents, were allowed timely and adequate access to oversee the corrective action; and (2) the secretary of health and environment has approved the corrective action and certified that the action taken has met all requirements and rules and regulations of the secretary, or conditions of administrative orders or agreements which were in effect at the time of the accidental release or discharge. The provisions of this section shall apply to both releases and discharges and remedial actions taken prior to the effective date of this act and releases and discharges and remedial actions taken hereafter.

"(c) The secretary of health and environment is hereby authorized to adopt rules and regulations necessary for the administration of the provisions of this section.

"(d) Neither the state, nor any officer, employee or department of the state, shall incur any liability by reason of approval of any corrective action plan or any certification pursuant to this section.

"(e) The provisions of this section shall not apply to any release or discharge under the jurisdiction of the state corporation commission."

Like our common-law concept of strict liability, K.S.A. 65-6203 imposes a duty on the responsible party to compensate the injured owner absent any intent to interfere with a legally protected interest and absent any actionable negligence. But unlike the common-law concept of strict liability, K.S.A. 65-6203 contains no "abnormally dangerous activity" requirement. Thus, it appears K.S.A. 65-6203 imposes a liability that differs in kind from the abnormally dangerous standard for strict liability claims we adopted in *Williams*.

Despite the absence of the "abnormally dangerous activity requirement" in K.S.A. 65-6203, *Coffeyville Resources* contends the statutory language is ambiguous and urges us to find that the legislature did not intend for the statute to create a liability different

in kind than that developed in *Williams* or its progeny. In support, Coffeyville Resources devotes much of its appeal brief to a discussion of the legislative history of K.S.A. 65-6203.

Specifically, Coffeyville Resources argues the legislation originally was drafted in order to "ensure that after releases of contaminants were cleaned up by responsible parties in compliance with Kansas state law, the damaged landowners would be released from future liability." Coffeyville Resources points out that that K.S.A. 65-6203 as originally drafted, focused on this purpose and did not contain section (a)(1), which it characterizes as "the subsection that provides for payment of actual damages to the owner of contaminated property."

While Coffeyville Resources' argument might be persuasive if K.S.A. 65-6203 as ultimately enacted omitted section (a)(1), the simple fact is that the legislature not only chose to include section (a)(1) in the final enactment, it did so with clear and unambiguous language. Because the plain language of K.S.A. 65-6203 is clear and unambiguous, we do not look to legislative history to assist in interpreting the statute. Instead, we give effect to the legislative intention as expressed in the statutory language. See *Bergstrom*, 289 Kan. at 607; *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 271-72, 202 P.3d 7 (2009); see also *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs*, 290 Kan. 446, 464-65, 228 P.3d 403 (2010) ("[A]ppellate courts cannot delete vital provisions or add vital omissions to a statute if the legislature failed to enact the change as intended under any reasonable interpretation of the language used, regardless of the legislature's intention. Only the legislature may remedy these types of error.").

The clear and unambiguous language of K.S.A. 65-6203(a)(1) provides that any person responsible for the accidental release or discharge of materials detrimental to the quality of the waters or soil of the state has a "duty" to "[c]ompensate the owner of the property where the release or discharge occurred for actual damages incurred as the result of the release or discharge, or as the result of corrective action taken or access to take corrective action," unless the owner or "owner-permitted occupant" of the damaged

property had a "causal connection" to the release or discharge or contributed to the contamination.

Thus, like our common-law strict liability standard, K.S.A. 65-6203(a) imposes a duty on the responsible party to compensate an innocent landowner and to take corrective action in compliance with existing public health standards regardless of any intent, negligence, or misconduct of the person responsible for the accidental release or discharge. But unlike our common-law strict liability standard, K.S.A. 65-6203(a) does not consider whether the responsible party was engaged in an abnormally dangerous activity.

In reaching this conclusion, we note that the certified question asks us to determine whether K.S.A. 65-6203 creates "absolute liability." This question implies that there is a distinction between "strict liability" and "absolute liability." But these two terms are often used synonymously. See Black's Law Dictionary 8 (9th ed. 2009) (referring to "strict liability" for definition of "absolute liability"); Garner, A Dictionary on Modern Legal Usage 836 (2d ed. 1995) (noting the terms are "broadly synonymous"). And we see no reason to create the potential for confusion by designating the liability created by K.S.A. 65-6203 as "absolute liability." More importantly, the statue speaks for itself. The statute broadly mandates that any person responsible for an accidental release or discharge of material detrimental to the quality of the waters or soil of the state must compensate an innocent landowner for actual damages and must clean up the spill. Accordingly, we cannot provide a simple yes-or-no answer to the first certified question. Instead, we answer the first certified question as follows: K.S.A. 65-6203 imposes liability for an accidental release or discharge of materials detrimental to the quality of the waters or soil of the state that differs from our Kansas common-law strict liability standard. While both the common-law standard and the statute provide for liability absent any showing of intent, negligence, or misconduct on the part of the responsible party, only the statute provides for liability absent any showing that the responsible party was engaged in an abnormally dangerous activity.

*2. What statute of limitations, if any, applies to K.S.A. 65-6203?*

Having determined the nature of the liability imposed by K.S.A. 65-6203, we next address the second certified question: Which statute of limitations, if any, applies to K.S.A. 65-6203?

Because K.S.A. 65-6203 contains no specific statute of limitations, we look to K.S.A. 60-501 *et seq.* for the appropriate statute of limitations. See K.S.A. 60-501 ("The provisions of this article govern the limitation of time for commencing civil actions, except where a different limitation is specifically provided by statute."); *Kelly v. Primeline Advisory, Inc.*, 256 Kan. 978, 983, 889 P.2d 130 (1995) (applying general statute of limitations when statute in question did not contain specific statute of limitations).

The Eastmans contend this action was timely filed under K.S.A. 60-512(2), which provides a 3-year limitation period for "[a]n action upon a liability created by a statute other than a penalty or forfeiture." K.S.A. 60-512(2).

Coffeyville Resources contends K.S.A. 65-6203 creates no new liability and therefore K.S.A. 60-512(2) does not apply. Instead, Coffeyville Resources urges us to apply the 2-year limitation period of K.S.A. 60-513(a)(4) for injuries to the rights of another, not arising from contract or otherwise enumerated in K.S.A. 60-513(a).

To determine whether K.S.A. 60-512(2)'s 3-year limitation period for "[a]n action upon a liability created by a statute other than a penalty or forfeiture" applies in this case, we apply an "identical-elements" test. Under that test, we consider "whether a plaintiff would have had the *same* cause of action at common law, not *any* cause of action." *McCormick v. City of Lawrence*, 278 Kan. 797, 804, 104 P.3d 991 (2005); see *Burnett*, 283 Kan. at 150-54 (discussing identical-elements test but finding it unnecessary to apply the test when no cause of action equivalent to the plaintiff's ERISA claim existed at common law); *McCormick*, 278 Kan. at 804, 806-07 (concluding K.S.A. 22-2521 and K.S.A. 22-2522 created substantive rights not recognized at common law because "although one can imagine several common-law tort claims which might be brought based upon the facts alleged in this case . . . those torts involve different elements than what must be shown to establish a

violation of the strip search and body cavity search statutes"); *Kelly*, 256 Kan. at 982-83 (applying K.S.A. 60-512[2] to a securities fraud action under K.S.A. 17-1268[a] after concluding the statute "created new, substantive rights and liabilities not existing under common law" because "[f]raud-based actions under 17-1268[a] are not identical to common-law fraud actions").

The identical-elements test requires that we ascertain the most analogous cause of action under Kansas law. *Burnett*, 283 Kan. at 150-51, 154; see *McCormick*, 278 Kan. at 804-07. If an analogous common-law cause of action exists, we compare the elements of that action with the elements of the statute in question. If the statutory elements are not identical to the elements of the most analogous common-law cause of action, K.S.A. 60-512(2) applies. *Burnett*, 283 Kan. at 150-51; *McCormick*, 278 Kan. at 804-07.

Here, the Eastmans contend the statutory liability created under K.S.A. 65-6203 differs from our common-law strict liability, thus K.S.A. 60-512(2) applies. Conversely, Coffeyville Resources argues K.S.A. 60-513(a)(4) applies because K.S.A. 65-6203 merely codifies the common-law strict liability doctrine against those responsible for the release of oil or chemicals that cause damage to the property of another.

But Coffeyville Resources' argument ignores the basis of the modern doctrine of strict liability adopted in *Williams*—i.e., that to impose strict liability, a plaintiff must establish that the defendant engaged in an abnormally dangerous activity. See *Williams*, 241 Kan. at 114-16; see also *City of Neodesha*, (No. 101,183, slip op. at 19-20, 25-26) (holding that all strict liability claims in Kansas are governed by abnormally dangerous activity doctrine adopted in *Williams*); *Pullen v. West*, 278 Kan. 183, 189, 92 P.3d 584 (2004) (strict liability applies only if the defendant engages in an abnormally dangerous activity).

In contrast, K.S.A. 65-6203 requires no consideration of the type of activity engaged in by the responsible party or of any other circumstances surrounding an accidental release or discharge of harmful materials. Instead, the statute broadly mandates that any person responsible for an accidental release or discharge of material detrimental to the quality of the waters or soil of the state

must compensate an innocent landowner for actual damages and must clean up the spill. See K.S.A. 65-6203(a); see also *Vowell v. Coffeyville Res. Ref. & Mktg.*, 2011 WL 1484239, at *7 n.51 (D. Kan. 2011) (unpublished opinion) (finding in a related case that 3-year statute of limitations applied to actions brought under K.S.A. 65-6203[a] because, in contrast to common-law strict liability actions, to recover under K.S.A. 65-6203[a] a plaintiff "need only show that the defendant allowed oil to be released and, due to this release, his property has been damaged").

Because the elements necessary to establish liability imposed under K.S.A. 65-6203 are not identical to the elements necessary to impose liability under the common-law doctrine of strict liability, we conclude K.S.A. 65-6203(a) imposes a new, substantive right not recognized at common law. Thus, the answer to the second certified question is that the 3-year statute of limitations in K.S.A. 60-512(2) applies to actions brought under K.S.A. 65-6203.