No. 124,511

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOSEPH A. BOTT,
*Appellant*,

v.

STATE OF KANSAS and KANSAS HIGHWAY PATROL,
*Appellees*.

SYLLABUS BY THE COURT

1.

K.S.A. 60-512(2) applies when a statute creates a liability where liability would not exist except for the statute. For example, an action would not be based on a liability created by statute if the right would exist at common law without the benefit of the statute. If the statute merely provides a procedure for obtaining relief, it does not trigger the application of the three-year statute of limitations under K.S.A. 60-512(2).

2.

Under K.S.A. 60-513(b), in part, the causes of action listed in K.S.A. 60-513(a) shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until a time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party.

Appeal from Shawnee District Court; MARY E. CHRISTOPHER, judge. Opinion filed November 10, 2022. Affirmed.

*Kurt A. Harper*, of Depew Gillen Rathbun & McInteer, LC, of Wichita, for appellant.

*Arthur Chalmers*, assistant attorney general, *Bryan A. Ross*, assistant attorney general, and *Derek Schmidt*, attorney general, for appellee State of Kansas.

*Sarah E. Washburn*, legal counsel, for appellee Kansas Highway Patrol.

Before WARNER, P.J., GREEN and HILL, JJ.

GREEN, J.: Joseph A. Bott appeals after the district court dismissed his lawsuit against the State and the Kansas Highway Patrol (KHP). The district court also denied a claim that Bott filed against the Kansas Public Employees Retirement System (KPERS), who is not a party to this appeal. Bott's claims concerned the Deferred Retirement Option Program (DROP). Bott claims the district court erred in granting the motion to dismiss because it improperly applied the statute of limitations, improperly determined when his claim accrued, and improperly denied his claim against KPERS by misinterpreting statutes. We conclude that the district court did not err when it applied the statute of limitations to Bott's claim. We also conclude that the district court did not err in determining when Bott's claim accrued. Finally, we conclude that the district court did not err when it denied Bott's claim against KPERS because the district court properly interpreted the applicable statutes. As a result, we affirm the district court's dismissal of Bott's claims.

FACTS

Joseph A. Bott began working for KHP in July 1984 and had been enrolled as a member of the Kansas Police and Firemen's Retirement System (KP&F) throughout his

2

employment with KHP. In June 2016, Bott contacted an employee with KPERS and requested a retirement benefit estimate if he entered DROP.

In essence, DROP is available to KP&F members with the KHP and Kansas Bureau of Investigation who are eligible for full retirement. But instead of retiring, a given employee can elect to participate in DROP and have his or her monthly retirement benefit accumulate in a DROP account for a period of three, four, or five years—known as a DROP period—while he or she continues to work. During the DROP period, an employee does not accrue additional service time credit but can receive interest on the money in his or her DROP account if KPERS's investment returns each year meet a certain threshold. Upon retirement, the employee begins receiving his or her monthly retirement benefits, as well as a lump-sum payment for the money accrued in the DROP account over the DROP period.

After filing a retirement benefit estimate request, Bott and a KPERS employee engaged in a series of e-mails in which Bott sought to clarify questions he had about how DROP worked and how it would affect his retirement benefits if he entered a DROP program on December 1, 2016. After settling on that date, Bott applied for DROP in September 2016. Later that same month, Bott sent a letter to Major Jason De Vore. In the letter, Bott told De Vore that he wanted to enter DROP for a five-year DROP period. At the end of the month, Colonel Mark Bruce responded to Bott's letter and informed Bott that his request to participate in a five-year DROP period had been denied.

At some point afterwards, Bruce met with Bott and encouraged him to complete an application for DROP with a three-year DROP period. After Bott did so, Bruce sent another letter in October 2016 notifying Bott that his request to enter DROP with a three-year DROP period had been approved. Bruce then signed Bott's application on the Appointing Authority line in the Employer Acknowledgement section, and Lea Weishaar signed the Designated Agent line of the same section. Towards the end of that month, a

KPERS employee sent Weishaar a letter confirming receipt of Bott's DROP application. The letter stated that Bott's DROP period began on December 1, 2016, and would end on November 30, 2019.

In June 2019, Bott contacted KPERS regarding his DROP period, indicating he wished to change his DROP period from three years to five years. Bott also included his previous correspondence with De Vore, Bruce, and an undated e-mail from Major Scott Harrington concerning who could participate in DROP. A few days later, KPERS responded to Bott's request and notified him that he could not change his DROP period election because the decision was irrevocable. KPERS's general counsel also sent Bott a letter explaining why he could not change his DROP period election.

In September 2019, Bott sued the State, KHP, and KPERS in district court. In brief, Bott alleged that his request to participate in a 5-year DROP period was wrongfully rejected and sought damages for an amount equal to the 24-month difference between the 3-year DROP period and the 5-year DROP period.

In November 2019, KPERS issued a final agency determination that Bott could not change his DROP period election. In December 2019, KPERS received Bott's application for DROP and monthly retirement benefits, which also indicated the DROP period had been completed. Later the same month, Bott timely appealed KPERS's final agency determination, and the district court entered an order of dismissal without prejudice regarding Bott's September 2019 petition, which allowed Bott to seek exhaustion of his administrative remedies. Shortly afterwards, KPERS notified Bott that it had received his application and confirmed his retirement date of January 1, 2020.

In November 2020, KPERS issued a final order affirming its determination that Bott could not change his DROP period election from three years to five years. The following month, Bott filed another action in district court against the State, KHP, and

KPERS. In this petition, he sought judicial review of KPERS's final order under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq., in count I, as well as damages from the State and KHP in count II.

The district court later granted the motion to stay discovery and proceedings regarding count II filed by the State and KHP, pending final resolution of Bott's KJRA appeal against KPERS in count I. In May 2021, the district court denied count I of Bott's petition, dismissed KPERS as a defendant, and rescinded its order staying count II of Bott's petition.

The State and KHP later moved jointly to dismiss Bott's petition regarding count II, citing the running of the statute of limitations. Initially, the district court denied the motion but later granted the motion to dismiss after the State and KHP moved jointly for reconsideration of their initial motion to dismiss.

Bott timely appeals.

ANALYSIS

As an initial matter, we note that the Legislature amended the language of K.S.A. 74-4986n(b), which now reads, in part: "A member who first elected a DROP period of less than five years may extend, with the employer's authorization, such DROP period upon making application to the system." The statutory change became effective July 1, 2021. See L. 2021, ch. 75, § 5. Bott did not raise any argument concerning the change issue in district court, which means he cannot raise it on appeal. See *In re Adoption of Baby Girl G.*, 311 Kan. 798, 801, 466 P.3d 1207 (2020).

5

*Did the district court err in applying the statute of limitations?*

Bott claims that the district court erred in determining the applicable statute of limitations in his action. Specifically, Bott contends that the district court erred when it concluded that K.S.A. 60-512(2) did not apply to his claim.

In its original order regarding this claim, the district court concluded:

> "[T]he DROP Act is not a statute which creates liability. Although K.S.A. 74-4986k, *et seq*. creates a statutory retirement benefit for [Kansas Bureau of Investigation] agents and certain firemen and police officers, it does not create any liability separate from preexisting common law torts. Therefore, the Court finds the three-year statute of limitations under K.S.A. 60-512 does not apply to the DROP Act."

As stated earlier, the district court did not originally grant the joint motion to dismiss filed by the State and KHP. But after the State and KHP moved jointly for reconsideration, the district court concluded that no genuine issue of material fact existed and granted the joint motion to dismiss.

Our standard of review is this: "Whether a district court erred by granting a motion to dismiss for failure to state a claim is a question of law subject to unlimited review." *Jayhawk Racing Properties v. City of Topeka*, 313 Kan. 149, 154, 484 P.3d 250 (2021). When K.S.A. 2021 Supp. 60-212(b)(6) is used to challenge the legal sufficiency of a claim, the appellate court will view the well-pleaded facts in a light most favorable to the plaintiff and assume as true those facts and any inferences reasonably drawn from them. If those facts and inferences state *any* claim upon which relief can be granted, then dismissal is improper. Dismissal is proper only when the allegations in the petition clearly demonstrate the plaintiff does not have a claim. *Kudlacik v. Johnny's Shawnee, Inc.*, 309 Kan. 788, 790, 440 P.3d 576 (2019).

To the extent that we must interpret statutes, we exercise unlimited review because statutory interpretation presents a question of law. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019). The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *Montgomery v. Saleh*, 311 Kan. 649, 654, 466 P.3d 902 (2020). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. 311 Kan. at 654-55.

At issue in this case is whether K.S.A. 60-512(2) or K.S.A. 60-513 applies to Bott's claim. The two statutes require different causes of action to be brought within either two or three years. K.S.A. 60-512(2)—the statute that Bott maintains should have been applied to his claim—provides a three-year limitation period for "[a]n action upon a liability created by a statute other than a penalty or forfeiture." Bott argues that the State, by enacting the DROP Act, K.S.A. 74-4986k et seq., created a liability on behalf of the program participants that had otherwise not previously existed.

In contrast, K.S.A. 60-513(a) states that certain actions must be brought within two years. The State and KHP argue that Bott's claim was subject to a two-year statute of limitations under K.S.A. 60-513(a)(3) or (a)(4), which concerns actions for fraud and actions for injuries to the rights of another, respectively.

We are guided in this inquiry by a previous decision of our Supreme Court that has considered the issue when K.S.A. 60-512(2) or K.S.A. 60-513 should apply under a party's claim. Most significantly, in *Eastman v. Coffeyville Resources Refining & Marketing*, 295 Kan. 470, 471, 284 P.3d 1049 (2012), Benjamin and Marcita Eastman sued Coffeyville Resources Refining & Marketing, LLC after it "accidentally released

7

about 90,000 gallons of crude oil into floodwaters of the Verdigris River in Coffeyville." The Eastmans originally asserted a nuisance claim but later sought to recover damages under K.S.A. 65-6203, which required compensation to be paid by the person responsible for an accidental release of materials harmful to the waters or soil to the property owner where the discharge occurred for actual damages incurred by the property owner as a result of the release or discharge.

In this case, our Supreme Court had to determine the nature of the liability imposed under K.S.A. 65-6203. After making that determination, our Supreme Court had to determine what statute of limitations, if any, applied to K.S.A. 65-6203. On this argument, the Eastmans maintained that they had timely filed their cause of action because the three-year statute of limitations embodied in K.S.A. 60-512(2) applied to their suit. In contrast, Coffeyville Resources argued that the two-year statute of limitations embodied in K.S.A. 60-513(a)(4) applied because K.S.A. 65-6203 did not create any new liability. En route to its holding, our Supreme Court stated:

"To determine whether K.S.A. 60-512(2)'s 3-year limitation period for '[a]n action upon a liability created by a statute other than a penalty or forfeiture' applies in this case, we apply an 'identical-elements' test. Under that test, we consider 'whether a plaintiff would have had the *same* cause of action at common law, not *any* cause of action. . . ."
"The identical-elements test requires that we ascertain the most analogous cause of action under Kansas law. If an analogous common-law cause of action exists, we compare the elements of that action with the elements of the statute in question. If the statutory elements are not identical to the elements of the most analogous common-law cause of action, K.S.A. 60-512(2) applies. [Citations omitted.]" 295 Kan. at 478-79.

After applying the identical elements test, our Supreme Court concluded that the three-year statute of limitations in K.S.A. 60-512(2) applied to the Eastmans' actions brought under K.S.A. 65-6203 "[b]ecause the elements necessary to establish liability

8

imposed under K.S.A. 65-6203 are not identical to the elements necessary to impose liability under the common-law doctrine of strict liability." 295 Kan. at 480.

By contrast, Bott argues that the district court's error "in rejecting the applicability of the three-year statute of limitations prescribed in K.S.A. 60-512 stems from . . . a confusion concerning how to properly label [his] claims against the [State and KHP] under Count II of the Petition." Nevertheless, any confusion the district court had in labeling Bott's claim would seem to have occurred from Bott's failure to label the claim in his petition. Even so, Bott contends on appeal that he stated a claim for fraudulent inducement of a contractual agreement. We agree.

The elements of fraudulent inducement are as follows:

"(1) The defendant made false representations as a statement of existing and material fact; (2) the defendant knew the representations to be false or made them recklessly without knowledge concerning them; (3) the defendant made the representations intentionally for the purpose of inducing another party to act upon them; (4) the other party reasonably relied and acted upon the representations; (5) the other party sustained damages by relying upon the representations. A representation is material when it relates to some matter that is so substantial as to influence the party to whom it is made. [Citations omitted.]" *Stechschulte v. Jennings*, 297 Kan. 2, 19-20, 298 P.3d 1083 (2013).

Here, Bott's claim met the essential elements of a fraudulent inducement action. For example, Bott alleged in his suit the following: (1) Bruce falsely represented he had discretion to validly reject Bott's original application for a 5-year DROP election; (2) Bruce either knew he did not have the authority to reject Bott's original DROP period election or made the representation without knowing whether he had such discretion; (3) Bruce made such representation because he wanted Bruce to change his DROP election from a 5-year DROP period to a 3-year DROP period; (4) Bott relied on Bruce's

9

representation; and (5) Bott suffered damages as a result of the money he lost because of the 24-month difference between a 3-year DROP period and a 5-year DROP period.

Nevertheless, when we contrast the identical elements test discussed in *Eastman* to the statute in question in Bott's claim, this Act (K.S.A. 74-4986k et seq.) does not provide a separate statutory right for Bott to recover damages. For example, in *Eastman*, the Eastmans' suit against Coffeyville Resources was based on a statutory right to recover damages under K.S.A. 65-6203. 295 Kan. at 471-72. Here, Bott's action is not based on any statutory right to recover damages.

Indeed, in its original order, the district court arrived at the same conclusion, stating:

> "The DROP Act does not resemble any of the statutory acts creating liability that were cited in *Gehring*[ *v. State*, 20 Kan. App. 2d 246, 886 P.2d 370 (1994)], such as the [Kansas Tort Claims Act], the [Kansas Consumer Protection Act], the veterans' preference law, etc., as the Drop Act does not contain any provisions for violations of the act."

Moreover, we have previously stated that "[t]he appropriate inquiry to determine whether a liability is created by a statute (thus making K.S.A. 60-512[2] applicable) is whether liability for resultant damages would not arise but for the statute." *Haag v. Dry Basement, Inc.*, 11 Kan. App. 2d 649, 650, 732 P.2d 392 (1987). In *Gehring v. State*, 20 Kan. App. 2d 246, 250, 886 P.2d 370 (1994), this court stated:

> "In determining whether the three-year statute of limitations applies, our inquiry is whether the statute created the cause of action. An action is not based upon a liability created by statute if the right would exist at common law without the statute. A statute is merely remedial if it does not give any new rights."

Our Supreme Court also adopted this approach in *Burnett v. Southwestern Bell Telephone*, 283 Kan. 134, 145-46, 151 P.3d 837 (2007), when the court quoted this court's standard in *Pecenka v. Alquest*, 6 Kan. App. 2d 26, 28, 626 P.2d 802 (1981). The *Pecenka* court reasoned: "It is not enough to simply state that there is an injury to the rights of another to remove the cause of action from the operation of the three-year statute of limitations. Rather, the inquiry must be whether the statute created the cause of action." 6 Kan. App. 2d at 28.

The *Pecenka* court then cited 51 Am. Jur. 2d, Limitation of Actions § 82, p. 659 and stated:

> "'A statute "creates" no liability, as regards the applicability of a statute of limitations with respect to an action to recover upon a liability created by statute, unless it discloses an intention, express or implied, that from disregard of the statutory command a liability for resultant damages shall arise which would not exist except for the statute. Clearly, an action is not based upon a liability created by statute if the right is one which would exist at common law in the absence of statute.'" 6 Kan. App. 2d at 28.

Given the absence of any statutory right to recover damages under K.S.A. 74-4986k et seq., paired with the fact that Bott's claim is identical to the elements of fraudulent inducement, we conclude that the district court properly rejected the application of K.S.A. 60-512(2) to Bott's claim.

*Did the district court err in determining when Bott's claim accrued?*

Next, we must determine whether the district court erred in determining when Bott's claim accrued. Bott argues "the earliest date on which [his] claim could have accrued was in November of 2020." The State and KHP argue Bott's claim accrued on September 30, 2016.

11

The standards of review set forth in the preceding issue regarding a motion to dismiss also apply to this issue. See *Jayhawk Racing Properties*, 313 Kan. at 154; *Kudlacik*, 309 Kan. at 790.

At this point, it would be helpful to recap the timeline of Bott's case. Bott completed his DROP application on September 1, 2016. On September 22, 2016, Bott sent a letter to De Vore stating he wished to enter DROP for a five-year DROP period. On September 30, 2016, Bruce responded to Bott's letter and informed Bott that his request to participate in a five-year DROP period had been denied. At some point afterwards, Bruce met with Bott and encouraged him to complete an application for DROP with a three-year DROP period.

After Bott complied, Bruce sent another letter on October 12, 2016, notifying Bott his request to enter DROP with a three-year DROP period had been approved. On October 18, 2016, KPERS received Bott's DROP application. On October 20, 2016, Bruce signed Bott's application on the Appointing Authority line in the Employer Acknowledgement section. Weishaar signed Bott's DROP application on October 21, 2016, on the Designated Agent line in the Employer Acknowledgement section. On October 25, 2016, a KPERS employee sent Weishaar a letter confirming receipt of Bott's DROP application. The same day, a KPERS employee sent Bott a letter confirming his DROP start and end dates.

On June 5, 2019, KPERS's general counsel notified Bott he could not change his DROP period election. On November 15, 2019, KPERS issued a final agency determination that Bott could not change his DROP period election. On December 4, 2019, KPERS received Bott's application for DROP and monthly retirement benefits, which also indicated the DROP period had been completed. On December 9, 2019, Bott appealed KPERS's final agency determination. On December 11, 2019, KPERS notified Bott it had received his application and confirmed his retirement date of January 1, 2020.

On November 20, 2020, KPERS issued a final order affirming its determination that Bott could not change his DROP period election from three years to five years.

Having concluded that Bott's claim is governed by K.S.A. 60-513(a), we must determine the date Bott's claim accrued. This statute states:

"[T]he causes of action listed in subsection (a) shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party." K.S.A. 60-513(b).

This leads us to two inquiries related to determining when the statute of limitations on Bott's claim began to run: (1) When did Bott "suffer an actionable injury—i.e., when were all the elements of the cause of action in place? and (2) When did the existence of that injury become reasonably ascertainable to [him]?" *LCL v. Falen*, 308 Kan. 573, 583, 422 P.3d 1166 (2018).

In its July 2021 order, the district court identified September 30, 2016, as the triggering date. The district court based this conclusion on the fact that Bott identified that date as the date of KHP's wrongful conduct. The district court also deemed Bott's "argument concerning his pursuit of administrative remedies with KPERS" was confusing because his claim concerned the alleged wrongful conduct of KHP. As a result, the district court concluded that if Bott "is asserting a claim of fraud, fraudulent inducement, or negligent misrepresentation, and he first filed his Petition in Shawnee County District Court," the State and KHP were correct that his claim was barred by K.S.A. 60-513. Nonetheless, the district court did not originally grant the State and KHP's motion for dismissal because "genuine issues of material fact remain based on [Bott's] assertion that he first filed a lawsuit in Sedgwick County on September 17, 2019." But after the State and KHP moved jointly for reconsideration, the district court

13

granted the motion to dismiss because Bott's lawsuit filed on September 17, 2019, was a year later than the two-year statute of limitations, and Bott did not sustain his burden to provide information to support his assertion the statute of limitations had been tolled.

As stated earlier, Bott argues that "the earliest date on which [his] claim could have accrued was in November of 2020." Bott's brief does not specify a date on which he suffered an actionable injury. See *Falen*, 308 Kan. at 583. Instead, he essentially combines the two inquiries and argues his claim could not have accrued until he "had exhausted his efforts to obtain a 5-year benefit and that there was, in fact, no injury until the end of his three years and the refusal of KPERS and KHP to allow him a five-year election as he had originally attempted." He also argues that his claim could not have accrued until his injury had matured into being actionable, which he believes occurred after he completed his DROP period.

The State and KHP disagree and argue that Bott's action "could and should have been commenced within two years of [his] signature on his paperwork for enrollment into the DROP program on September 30, 2016. If not on the September 2016 date, then at the very latest, within two-years of [KPERS's] acceptance of the enrollment paperwork." The State and KHP contend that Bott suffered his alleged injury on September 30, 2016, when Bruce denied Bott's request to participate in a five-year DROP period. The State and KHP also contend that the extent of his injury was reasonably ascertainable on that date because he knew the decision was irrevocable, and he had already received an estimation of his retirement benefit payments. Lastly, the State and KHP assert that Bott was not required to exhaust administrative remedies against KPERS before filing his tort action against the State and KHP.

As an initial matter, the State and KHP are correct that KPERS is not a party to Bott's appeal. In Bott's December 2020 petition, he separated his claims against KPERS and his claims against the KHP in counts I and II, respectively. In count I Bott sought

14

judicial review of KPERS's determination that he could not change his initial DROP election period, and he asked the district court to only reverse KPERS's final order. But in count II, he sought relief for KHP's alleged wrongful actions. Thus, it is unclear why Bott would have to wait until KPERS issued a final agency determination to pursue a tort claim against the State and KHP.

In *Roe v. Diefendorf*, 236 Kan. 218, 689 P.2d 855 (1984), our Supreme Court dealt with an analogous situation. There, Roe brought a negligence action against Diefendorf, seeking damages for injuries suffered in an automobile accident. The accident occurred in November 1979, and Roe filed suit against Diefendorf in June 1982. Diefendorf sought summary judgment against Roe, claiming the statute of limitations had run. The district court denied the motion, reasoning that the statute of limitations under K.S.A. 60-513(b) had not run because Roe did not realize he sustained a substantial injury until February 1981.

On appeal, our Supreme Court had to determine how K.S.A. 60-513(b)'s "substantial injury" provision should be interpreted. Our Supreme Court began by discussing previous decisions and noted what appeared to be a conflict in how cases involving knowledge of an injury versus extent of an injury were decided. In resolving this issue, our Supreme Court stated:

> "Our decisions are reconcilable. The rule which has developed is: The statute of limitations starts to run in a tort action at the time a negligent act causes injury if both the act and the resulting injury are reasonably ascertainable by the injured person. In *Hecht*[ *v. First National Bank & Trust Co.*, 208 Kan. 84, 490 P.2d 649 (1971)], neither the negligent act nor the injury were ascertainable until a later date. The stated rule provides a constitutionally permissible interpretation of K.S.A. 60-513(b). We hold the use of the term 'substantial injury' in the statute does not require an injured party to have knowledge of the full extent of the injury to trigger the statute of limitations. Rather, it means the victim must have sufficient ascertainable injury to justify an action for recovery of the

15

damages, regardless of extent. An unsubstantial injury as contrasted to a substantial injury is only a difference in degree, *i.e.*, the amount of damages. That is not a legal distinction. Both are injuries from which the victim is entitled to recover damages if the injury is the fault of another." *Diefendorf*, 236 Kan. at 222.

In *Pancake House, Inc. v. Redmond*, 239 Kan. 83, 87, 716 P.2d 575 (1986), a case concerning a legal malpractice claim, our Supreme Court explained that "a cause of action accrues, so as to start the running of the statute of limitations, as soon as the right to maintain a legal action arises. . . . [A]n action accrues [when] the plaintiff could first have filed and prosecuted his action to a successful conclusion." More recently, our Supreme Court again adhered to the rule pronounced in *Pancake House* in another legal malpractice claim and stated that "'[a] cause of action accrues when the right to institute and maintain a suit arises, or when there is a demand capable of present enforcement.'" *Mashaney v. Board of Indigents' Defense Services*, 302 Kan. 625, 633, 355 P.3d 667 (2015) (quoting *Holder v. Kansas Steel Built, Inc.*, 224 Kan. 406, 410, 582 P.2d 244 [1978]).

Applying these principles, we determine that the district court correctly concluded that Bott—by bringing his tort claim against the State and KHP—suffered the alleged injury on September 30, 2016, because that is the date when Bruce denied his request to participate in a five-year DROP period. In the alternative, we conclude that Bott's alleged injury occurred on October 25, 2016, when KPERS sent Bott a letter confirming his DROP start and end dates.

We further conclude that Bott could have reasonably ascertained the extent of his injuries on either of those dates. See *Falen*, 308 Kan. at 583. Stated differently, Bott could have or should have known the existence of the injury he claimed to have suffered on either of those dates because that is when Bruce denied his application for a five-year DROP period and his participation in a three-year DROP period became official. His

16

DROP application form supports this conclusion because, in the DROP Commitment section, Bott selected December 1, 2016, as his irrevocable start date. And above his signature, the application states: "I confirm my election to participate in the DROP, and I understand that this election is irrevocable."

This conclusion is also supported by the versions of the statutes in effect when Bott entered DROP in 2016. The version of K.S.A. 74-4986*l*(a)(5) in effect then defined the DROP period as "the period of time that a member irrevocably elects to participate in the DROP pursuant to K.S.A. 74-4986n, and amendments thereto." Similarly, the version of K.S.A. 74-4986n(b) in effect then stated, in relevant part: "A member may participate in the DROP only once. An election under this section is a one-time irrevocable election."

Additionally, as our Supreme Court stated in *Diefendorf*, Bott was not required "to have knowledge of the full extent of the injury to trigger the statute of limitations. Rather, [substantial injury] means the victim must have sufficient ascertainable injury to justify an action for recovery of the damages, regardless of extent." 236 Kan. at 222. The fact Bott might not have known the precise total of damages he would have been owed does not change this conclusion because that would be a "difference in degree," "not a legal distinction." 236 Kan. at 222.

Thus, under K.S.A. 60-513(b), Bott suffered an actionable injury on either September 30, 2016, or October 25, 2016, and the existence of the injury became reasonably ascertainable then. See *Falen*, 308 Kan. at 583. As a result, Bott's claim against the State and KHP needed to have been brought within two years from those dates. See K.S.A. 60-513(a). Because he failed to do so, we conclude that the district court correctly dismissed his claim.

*Did the district court err by denying Bott's claim against the Kansas Public Employees Retirement System?*

In Bott's final claim, he contends that the district court erred when it concluded that KPERS could not accept his application to participate in a five-year DROP period after he had already selected a three-year DROP period. The State and KHP, however, argue that this issue is not properly before us because KPERS is not a party to this appeal. Neither Bott's original brief nor his reply brief challenges this contention. As stated earlier, the State and KHP are correct that KPERS is not a party to this appeal.

Even so, we conclude that the district court did not err in denying Bott's claim against KPERS. As previously stated, we exercise unlimited review when interpreting statutes. See *Nauheim*, 309 Kan. at 149.

When Bott filed his action against the State, KHP, and KPERS, he sought judicial review under the KJRA—based on K.S.A. 77-601 et seq. Bott challenged KPERS's determination that he could not change his DROP period election from three years to five years. He did not list a specific ground for relief; he simply asked the district court to deem KPERS's decision erroneous.

When resolving the claim on judicial review, the district court correctly noted that K.S.A. 77-621(c) sets forth the grounds on which a court can grant relief. Ultimately, the district court concluded that Bott's claim was brought under K.S.A. 77-621(c)(4), which allowed the district court to grant relief if it determined that KPERS "erroneously interpreted or applied the law." The district court then moved to statutory interpretation, assessing Bott's claim under the versions of the statutes in effect then.

As the district court pointed out, the version of K.S.A. 74-4986n(b) in effect when Bott began participating in DROP stated, in relevant part: "A member may participate in

18

the DROP only once. An election under this section is a one-time irrevocable election." Similarly, the version of K.S.A. 74-4986*l*(a)(5) in effect then defined DROP period as "the period of time that a member irrevocably elects to participate in the DROP pursuant to K.S.A. 74-4986n, and amendments thereto."

Having concluded Bott failed to sustain his burden under K.S.A. 77-621(a), the district court denied Bott's claim. We conclude the same. The district court followed the correct procedure under the KJRA and properly interpreted the statutes. As a result, we conclude that the district court properly denied Bott's claim against KPERS.

Affirmed.